**CHIP STEAK CO., Inc., et al., Plaintiffs,**

v.

**Clifford HARDIN, etc., et al., Defendants.**

**No. 49834.**

United States District Court,
N. D. California.

Oct. 20, 1971.

George A. McKray, San Francisco, Cal., for plaintiffs.

James L. Browning, U. S. Atty., and Brian B. Denton, Asst. U. S. Atty., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This action, brought for declaratory and injunctive relief, is before the court on plaintiffs' and defendants' cross-motions for summary judgment.

Plaintiffs Chip Steak Co.; Vao L. Cheney, president of Chip Steak Co.; Western Meat Packers Association; and, L. Blaine Liljenquist, president of the Western Meat Packers Association, bring this action against Clifford Hardin, Secretary of Agriculture; J. C. Leighty, Director, Technical Services Division, Consumer and Marketing Service, United States Department of Agriculture ("U.S. D.A."); and, M. E. Christopherson, Director, Western District Meat Inspection, San Francisco, California.

Plaintiffs allege in their first amended complaint that the Technical Service Division, Consumer and Marketing Service of U.S.D.A. prohibits the use of certain food preservatives, specifically, calcium sorbate, sodium sorbate, potassium sorbate and sorbic acid, in the manufacturing and processing of certain meat food products, by its practice of *not* approving labels which declare the presence of said preservatives; that said practice is contrary to the provisions of the Wholesome Meat Act; that no scientific basis exists for prohibiting the use of these preservatives; that plaintiffs desire to use these chemical preservatives in their products and that continued enforcement of the above practice threatens great and irreparable damage to plaintiffs' property rights.

On the basis of the above allegations plaintiffs seek in their amended complaint a declaratory judgment "that an administrative practice of the United States Department of Agriculture is invalid in that it is contrary to the procedures of the Wholesome Meat Act of 1967"; an injunction against the enforcement of said administrative practice; and, an order directing U.S.D.A. to comply with statutory rule-making procedures.

Defendants deny the existence of the practice as alleged by plaintiffs but admit that U.S.D.A. is continuing to disapprove labels which declare that chemical preservatives are present such as to cause the product to be adulterated or misbranded.

In earlier stages of this action this court denied, without prejudice, plaintiffs' motion for declaratory relief (denied December 23, 1969) and plaintiffs' motion for summary judgment (denied March 6, 1970) as prematurely brought since at that time U.S.D.A. was conducting rule-making proceedings on the issue of food additives in meat products.

U.S.D.A. has since adopted a regulation, 9 C.F.R. 318.7(d) (2), pursuant to the Federal Meat Inspection Act of 1907, 34 Stat. 1260, as amended by the Wholesome Meat Act of 1967, Pub.L. 90–201, 81 Stat. 584, 21 U.S.C. § 601 et seq. (Supp.1971), which provides as follows:

"(d) No substance may be used in or on any product if it conceals damage or inferiority or makes the product appear to be better or of greater value than it is.

Therefore:

\*　　\*　　\*　　\*　　\*　　\*

(2) Sorbic acid, calcium sorbate, sodium sorbate, and other salts of sorbic acid may not be used in cooked sausage or any other product \* \* \* "

The court now has before it plaintiffs' renewed motion for summary judgment which is, in effect, an attack on the validity of the above regulation.

Plaintiffs allege that the prohibited additives have been safely used in the past; that plaintiffs desire to use these additives in their products; and that to prohibit these additives would cause plaintiffs irreparable harm. We will assume that, if plaintiffs endeavor to market products bearing or containing the additives prohibited by the regulation, the products will be deemed "adulterated" by the Secretary of Agri-

culture and that plaintiffs may be subject to adverse publicity, defense of condemnation charges and possible fines.

Since the promulgation of 9 C.F.R. 318.7(d) (2) clearly constitutes final agency action, plaintiffs' challenge of the regulation is "ripe" for adjudication under Abbot Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

█ Plaintiffs first contend that the Secretary of Agriculture, in promulgating 9 C.F.R. 318.7(d) (2) under the Federal Meat Inspection Act, as amended, supra, was required by law to follow the same formalized rule-making procedures as are made applicable to the Secretary of Health, Education and Welfare under 21 U.S.C. § 348 (Food, Drug and Cosmetic Act), i. e., oral public hearings if requested by interested parties. The record indicates that plaintiffs demanded an oral hearing in the instant rule-making but that no such oral hearing was held. (See Documentary Record of Rule-Making Proceedings, filed January 8, 1971).

Since there are no rule-making requirements in the Meat Inspection Act, as amended, plaintiffs base their contention on the principle that the Federal Meat Inspection Act and the Food, Drug and Cosmetic Act must be read together when they deal with the same subject matter, i. e., food additives, citing the legislative history of the Federal Meat Inspection Act, as amended, (U.S.Code Cong. & Admin.News, 90th Cong., 1st Sess., vol. 2, at pp. 2194–2195 (1967)) and Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676 (9th Cir. 1949).

If Congress had intended that the Secretary of Agriculture's rule-making functions under the Federal Meat Inspection Act were to be bound by the procedures governing the Secretary of Health, Education and Welfare under the Food, Drug and Cosmetic Act, it would have expressly so provided. Plaintiffs have cited no provision in the Federal Meat Inspection Act, as amended, supra, wherein the procedural requirements of 21 U.S.C. § 348 are made applicable to the Secretary of Agriculture. Nor does a review of the legislative history of the Act reveal such a Congressional intent. Absent such a provision, rule-making procedures would be governed by the Administrative Procedure Act, 5 U.S.C. § 500 et seq.

█ Plaintiffs contend that they are entitled to a public oral hearing under the Administrative Procedure Act, 5 U.S.C. § 553.

Plaintiffs are in error. 5 U.S.C. § 553, in subsection (c), merely provides that, after having given notice of proposed rule-making, the agency must give "interested parties an opportunity to participate in the rule-making through submission of written data, views, or arguments with or without opportunity for oral presentation." (emphasis added). In the discretion of the Secretary of Agriculture, opportunity to submit written comments or materials sufficiently met the hearing requirement of the Act. See American Trucking Ass'n v. United States, 344 U.S. 298, 319–320, 73 S.Ct. 307, 97 L.Ed. 337 (1952); California Citizens Band Ass'n v. United States, infra. The administrative record of the rule-making proceedings here in question indicates that plaintiffs were given the opportunity to submit such written data and views as provided by the Act and that they in fact did so. (Record of Rule-Making Proceedings, filed January 8, 1971).

█ Plaintiffs next contend that U.S. D.A., in promulgating 9 C.F.R. 318.7(d) (2), failed to give proper notice of that regulation as required under Administrative Procedure Act, 5 U.S.C. § 553, providing in pertinent part that:

"(b) General notice of proposed rule making shall be published in the Federal Register * * *. The notice shall include–

* * * * * *

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved * * *."

On August 14, 1969, U.S.D.A. published a notice of a proposed regulation 9 C.F.R., Parts 301–321 (34 Fed.Reg. 155, pt. 2 at pp. 1394–13255) which included a proposed regulation 318.7 providing in subsection (a) that: "No product shall contain any substance which would render it adulterated or which is not approved by the Administrator" of the Consumer or Marketing Service of U.S.D.A. (34 Fed.Reg. at p. 13225). The notice then set forth a detailed chart of numerous additives which would be acceptable for use in meat products under specified conditions; sorbates were not included in that chart (except that potassium sorbate was allowed for use in dry sausage). (Id. at pp. 13225–29).

When regulation 9 C.F.R. 318.7 was finally adopted, subsection (a) read as follows:

"(a) (1) No chemical substance may be used in the preparation of any product unless it is approved in this part or Part 319 of this subchapter or by the Administrator in specific cases.

(2) No product shall bear or contain any substance which would render it adulterated or which is not approved in this part or Part 319 of this subchapter or by the Administrator in specific cases."

Subsection (c) (4) of the finally adopted regulation, containing the chart of "acceptable" food additives, remained unchanged as to sorbic acid and sorbates. Also, a new subsection (d) (2) which did not appear in the published notice, was included in the final regulation:

"(d) No substance may be used in or on any product if it conceals damage or inferiority or makes the product appear to be better or of greater value than it is.

Therefore:

\*      \*      \*      \*      \*      \*

(2) Sorbic acid, calcium sorbate, sodium sorbate, and other salts of sorbic acid may not be used in cooked sausage or any other product. \* \*"

Plaintiffs argue that the failure of U.S.D.A. to publish in the above notice the precise terms of 9 C.F.R. 318.7(d) (2), as finally adopted, deprived them of the notice required under 5 U.S.C. § 553, supra.

It has been held, however, that the Administrative Procedure Act does not require that the precise text of a proposed regulation be set forth in the published notice thereof so long as the published notice is sufficient to give affected parties notice of the substance of the proposed agency action. See, California Citizens Band Ass'n v. United States, 375 F.2d 43 (9th Cir. 1967); Willapoint Oysters v. Ewing, 174 F.2d 676 (9th Cir. 1949).

We are of the opinion that the notice as published sufficiently indicated that calcium sorbate, potassium sorbate, sodium sorbate and sorbic acid, which were not included in the chart, were to be prohibited in cooked sausage under the new regulation.

It appeared in the notice that only those additives which at some future time might be approved by U.S.D.A. or which appeared in the chart of "acceptable" additives, were to be used in meat products. The absence of sorbates from that list was highlighted by the fact that potassium sorbate for use in dry sausage (as distinguished from cooked sausage) was included.

It further appears that plaintiffs themselves, in their communications to U.S.D.A., so regarded the notice since they complained about what they described as the proposed prohibition of potassium sorbate. (See, copy of plaintiffs' reply brief, received by U.S.D.A. September 10, 1969, appearing in the Documentary Record of Rule Making Proceedings, filed January 8, 1971).

We conclude, therefore, that there is no merit to plaintiffs' contention that the published notice was insufficient.

■    Plaintiffs next contend that the Secretary of Agriculture, in promulgating regulations on the use of food additives in meat products is bound by 21 C.F.R. 121.101, a regulation promulgated by the Secretary of Health, Education

and Welfare pursuant to the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., permitting the use of certain food additives set forth in a list of substances characterized as "generally recognized as safe" among them calcium sorbate, potassium sorbate, sodium sorbate and sorbic acid.

Plaintiffs again argue that the Food, Drug and Cosmetic Act and the Federal Meat Inspection Act, as amended, must be read together when they deal with the same subject matter. Plaintiffs also rely on 21 U.S.C. § 607(c) (2) (Federal Meat Inspection Act, as amended) which provides that definitions, standards of identity or composition and standards of fill under the Federal Meat Inspection Act shall not be inconsistent with standards established by the Secretary of Health, Education and Welface under the Food, Drug and Cosmetic Act and further that the Secretary of Agriculture and the Secretary of Health, Education and Welfare shall confer to coordinate effective administration of both Acts.

It is clear, however, that Congress, in amending the Federal Meat Inspection Act of 1907, 34 Stat. 1260 by enacting the Wholesome Meat Act of 1967, Pub.L. 90–201, 81 Stat. 584, 21 U.S.C. § 601 et seq. (Supp.1971), intended to vest the Secretary of Agriculture with the power to pass regulations prohibiting or restricting the use of food additives *in meat products* notwithstanding the designation of such additives as "generally recognized as safe" in regulations promulgated by the Secretary of Health, Education and Welfare under the Food, Drug and Cosmetic Act.

Title 21 U.S.C. § 601(m) (2) (C) of the Federal Meat Inspection Act, as amended, provides that a meat food product shall be deemed adulterated if it bears or contains any food additive which is unsafe within the meaning of the Food, Drug and Cosmetic Act.

That provision, however, is qualified by the following proviso:

"*Provided,* That an article which is not adulterated under clause * * * (C) * * * shall nevertheless be deemed

adulterated if use of the * * * food additive * * * is prohibited by regulations of the Secretary (of Agriculture) in establishments at which inspection is maintained * *."

The legislative history of the Federal Meat Inspection Act, as amended, supra, indicates that by the above proviso Congress intended to "allow the Secretary of Agriculture to impose *more stringent restrictions* * * * *for food additives* * * * in or on meat products subject to the new act than are imposed by the Secretary of Health, Education, and Welfare under the Federal Food, Drug, and Cosmetic Act." (U.S.Code Cong. & Admin.News, 90th Cong., 1st Sess., vol. 2 at p. 2195 (1967) (emphasis added)).

Further, an Act of September 6, 1958, Pub.L. 85–929, 72 Stat. 1789, amending the Food, Drug and Cosmetic Act to empower the Secretary of Health, Education and Welfare to promulgate regulations on food additives, expressly provides in Section 7 as follows:

"Nothing in this Act (Federal Food, Drug and Cosmetic Act) shall be construed to exempt any meat or meat food product or any person from any requirement imposed by or pursuant to the * * * Meat Inspection Act of March 4, 1907, 34 Stat. 1260, as amended and extended (21 U.S.C. § 71 and the following)."

Plaintiffs finally contend that there exists no rational basis for 9 C.F.R. 318.7(d) (2).

Regulation 9 C.F.R. 318.7(d) (2) was promulgated by the Secretary of Agriculture pursuant to the authority granted in the proviso to 21 U.S.C. § 601(m) (2) (D), discussed above, which provides that products will be considered to be adulterated if they contain food additives which are prohibited by regulations of the Secretary of Agriculture and 21 U.S.C. § 601(m) (8) (Federal Meat Inspection Act, as amended) which provides that a meat product shall be considered "adulterated" if damage or inferiority has been concealed in any manner or if any substance has been

added to it to make it appear better or of greater value than it actually is.

The prohibition of sorbates in the challenged regulation is expressly based on the ground that sorbates and sorbic acid are additives which conceal inferiority and damage and make the product appear better than it actually is.

The Secretary of Agriculture in promulgating Regulation 9 C.F.R. 318.7 (d) (2), made a finding to that effect in the following stated "considerations:"

"Mold and bacterial slime develop on the surface of cooked sausages and similar products held for long periods under good refrigeration or for shorter periods at higher temperatures. The appearance of mold and other surface growth serves to alert consumers to the condition of the product. Sorbates are most effective moldicides and bactericides for products with high acidity, i. e., a pH of 5 or below. These chemicals are not effective in products such as cooked sausages since their pH ranges from 5.9 to 6.2. The presence of sorbates in subsurface sausage tissues results in changes in bacterial flora of the products. Sorbates have been demonstrated to inhibit selectively the development of aerobic bacteria and "simultaneously permit the luxuriant growth of clostridium perfringes and clostridium botulinum which are organisms associated with serious health hazards. The use of sorbates for such products therefore conceals damage and inferiority because of bacterial action, and makes the products appeal better and of greater value than they are in view of their decomposing condition." (35 Fed.Reg. No. 193, pt. II at p. 15553 (Oct. 3, 1970))

These considerations are supported by materials set forth in the documentary record of the rule-making proceedings, specifically by the memorandum of Ralph W. Johnston, Head, Microbiology Group, Laboratory Branch, Technical Services Division, U.S.D.A., dated July 31, 1970, and by a number of publications authored by experts in the fields of microbacteriology and food science. (See, Documentary Record of Rule Making Proceedings, filed January 8, 1971).

On the basis of the above record and in view of the fact that the regulation in question presents questions of a technical nature which are properly within the expertise of the administrative agency, this court concludes that there was rational basis for 9 C.F.R. 318.7(d) (2).

Assuming this court would be required to conduct an evidentiary hearing de novo on the question whether there was a rational basis for the promulgation of 9 C.F.R. 318.7(d) (2), the affidavits of Vaughn and York filed by plaintiffs (filed as an exhibit to plaintiffs' supporting memorandum January 28, 1971) fail to raise a genuine issue of fact as to the principal ground upon which the regulation was promulgated, i. e., that sorbates and sorbic acid retard the growth of mold and other surface growth in meat products and thereby misled the consumer in making the product appear better than it actually is.

The affidavit of Vaughn, supra, does not deny or even cast doubt on that point. It merely challenges another, separate ground upon which the regulation was based, i. e., that sorbates are also a medium for the growth in meats of clostridia—a cause of food poisoning.

The affidavit of York, supra, while similarly challenging this last mentioned ground, does not challenge the fact that sorbates and sorbic acid retard the growth of molds and other surface growth in meat products while subsurface bacterial spoilage is occurring and thereby mislead the consumer by causing the product to appear better than it actually is. In fact, York admits that sorbates do just that when he states: "Therefore, sorbic acid may be effective in cooked sausage in retarding mold and yeast growth but not against bacterial spoilage." (Affidavit of York filed as an exhibit to plaintiffs' supporting memorandum January 28, 1971, at p. 4).

Moreover, the affidavit of York (at p. 6) recites that he has no objections to statements 5 and 6 contained in an affi-

davit of Ralph W. Johnston (Attached as an exhibit to defendants' supporting memorandum, filed January 4, 1971) submitted by defendants wherein Johnston stated that: "Sorbic acid and its salts inhibit the growth of fungi such as mold and yeast * * *" and that "* * * they also inhibit the growth of some but not all species of bacteria."

It should also be noted that Vaughn and York, although authors of one of the quoted professional articles appearing in the documentary record of the rule-making proceedings, were but two of several authorities relied upon by the Secretary of Agriculture in finding his basis for 9 C.F.R. 318.7(d) (2).

From the affidavits of Vaughn and York, submitted by plaintiffs, and the affidavit of Johnston, submitted by defendants, as well as the documentary record of the rule-making proceedings, it appears that there is no genuine issue as to the following material fact, i. e., that sorbic acid and sorbates prevent the growth of mold and other surface growths in meat products, such as cooked sausages, while not inhibiting certain bacterial subsurface spoilage and thus make meat products appear better than they actually are, thereby misleading the consumer.

It follows, therefore, that, even assuming there could be dispute about the Secretary's second ground for his regulation, the undisputed first ground would alone constitute a rational basis for 9 C.F.R. 318.7(d) (2).

Having found that regulation 9 C.F.R. 318.7(d) (2) is both procedurally and substantively valid, this court is of the opinion that U.S.D.A. is authorized to disapprove labels which declare the presence of the prohibited additives because the use of the prohibited additives would render the product "adulterated" within the meaning of the Federal Meat Inspection Act, 21 U.S.C. § 601(m) (2) (C). The Federal Meat Inspection Act, as amended, in 21 U.S.C. §§ 604, 606, charges U.S.D.A. with the responsibility of ascertaining that products to which the official inspection legend is affixed are not "adulterated." The disapproval of labels bearing additives which would render the product "adulterated" is, therefore, a lawful exercise of the functions of U.S.D.A.

For the reasons above set forth it is ordered that plaintiffs' motion for summary judgment should be, and the same is hereby, denied; and defendants' motion for summary judgment should be, and the same is hereby, granted, insofar as it seeks a declaratory judgment that regulation 9 C.F.R. 318.7(d) (2) is a valid and enforceable regulation of the Secretary of Agriculture and that the practice of disapproving labels as admitted by defendants is a lawful exercise of its functions under the Federal Meat Inspection Act, as amended.