UNITED STATES of America

v.

**Eli DANIELS and Harry Daniels, d/b/a Heart of the Black Hills Stations, Licensee of Radio Station KDSJ, Deadwood, South Dakota.**

Civ. No. 75–5072.

United States District Court,
D. South Dakota.

Aug. 31, 1976.

Raymond L. Strassburger and John P. Greenspan, Daniel M. Armstrong, Associate General Counsel, Ashton R. Hardy, General Counsel, Federal Trade Communications Commission, Washington, D. C., for the Commission.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., for plaintiff.

## MEMORANDUM OPINION

BOGUE, District Judge.

This matter is now before the Court on cross motions for Summary Judgment. This Court has carefully reviewed the pleadings, briefs and exhibits and finds that the basic facts are not in dispute.

On March 19, 1965, Defendant was issued a Standard Broadcast Station License for radio station KDSJ, which authorized him to operate his radio station until April 1, 1968, under the terms and conditions set out in the license. For purposes of this action, the relevant conditions were as follows:

1) During the month of November, Defendant was authorized to broadcast with a non-directional antenna between the hours of 6:45 a. m. and 4:30 p. m. Mountain Standard Time (a directional antenna was required to be used during other [nighttime] hours of operation); and

2) The license was issued:

"[s]ubject to the provisions of the Communications Act of 1934, subsequent Acts, and Treaties, and Commission Rules made thereunder. . . ."

Through application and renewal, the license, together with the relevant conditions set out above, was effective at all times relevant to this action.

Although the license specifically set out the hours during which operation with a non-directional antenna was permissible, until 1967 a rule promulgated by the Federal Communications Commission effectively permitted radio stations such as that operated by Defendant to begin broadcasting with non-directional antennae at hours earlier than those specified in the licenses. This rule was found in 47 C.F.R. § 73.87, which stated in relevant part:

"standard broadcast stations authorized to provide regular program service on any regional channel . . . may operate with their authorized daytime facilities between 4 a. m. local standard time and local sunrise . . . ."

Defendant's radio station fell within the provisions of the above-quoted former 47 C.F.R. § 73.87.

In 1967, however, 47 C.F.R. § 73.87 was completely rewritten, and it now reads as follows:

> Except as provided in § 73.98 [operation during emergency] and § 73.99 [authorizing a grant of presunrise service authority upon request and under certain conditions], no standard broadcast station shall operate at times, or with modes or powers, other than those specified in the basic instrument of authorization.

In the Notice of Rule Making, at 32 Fed. Reg. 10437–10448 (July 15, 1967), a discussion of the need for the 1967 amendment appears. Reference is made there to increasing complaints of objectionable presunrise interference, and the difficulty of identifying the source of the interference in view of a constantly increasing number of stations broadcasting with non-directional antennae before sunrise. For a thorough and enlightening discussion concerning the nature of this problem and the history of 47 C.F.R. § 73.87, see *WBEN, Inc. v. United States*, 396 F.2d 601 (2nd Cir. 1968), *cert. denied* 393 U.S. 914, 89 S.Ct. 238, 240, 21 L.Ed.2d 200 (1968).

An F.C.C. inspection of Defendant's radio station disclosed that on November 2–7, 9–13 and 16–18 inclusive, Defendant was commencing the use of daytime equipment (non-directional antenna) prior to the sunrise time of 6:45 a. m. authorized in its license. On December 9, 1970, a notice of this apparent violation of 47 C.F.R. § 73.87 was mailed to Defendant. On December 19, 1970, Defendant replied to the notice by stating that he was unaware of the changes in permissible presunrise authorization, and that he began operating according to the times specified in his license upon being notified of the apparent violation. A Notice of Apparent Liability in the amount of $1,000.00 was mailed to Defendant on August 18, 1971. This notice was based on the apparent presunrise violations, and another apparent violation relating to failure to properly maintain an operating log.

In reply to the Notice of Apparent Liability, Defendant again asserted that he was unaware of the change in 47 C.F.R. § 73.87 until he was notified of the apparent violations. He also offered an explanation of the operating log violation. By a Memorandum Opinion and Order dated March 12, 1973, the Federal Communications Commission held that Defendant was charged with notice of the 1967 rule change, and assessed a forfeiture of $800.00 for the presunrise violations. The Apparent Liability of $1,000.00 was reduced when the Commission accepted Defendant's explanation of the deficiencies in his operating log.

Defendant's request for rescission of the $800.00 forfeiture was denied October 23, 1974. Defendant continued to decline to make payment, and the United States filed this action on October 23, 1975 seeking judgment in the amount of $800.00.

The initial issue now before the Court concerns the nature and degree of notice which the Federal Communications Commission was required to give upon its amendment of 47 C.F.R. § 73.87. Notice of the amendment was published in the Federal Register on July 15, 1967 at 32 Fed.Reg. 10447. No personal notice of the amendment was mailed to Defendant. On the other hand, it may be noted that Defendant listed the Federal Register on his December 18, 1967 Application for Renewal of Broadcast Station License as one of the publications he subscribed to in order

> . . . to keep informed of the requirements of the Communications Act and the Commission's Rules and Regulations . . .

Defendant urges that the 1967 amendment of 47 C.F.R. § 73.87 constituted a modification of his license for which written personal notice and opportunity for public hearing is required under 47 U.S.C. § 316(a) and 47 U.S.C. § 303(f). Plaintiff contends that the 1967 amendment was promulgated pursuant to the Commission's general rule-making authority, 47 U.S.C. §§ 154(i), 303(r), for which proper and timely publication in the Federal Register imparts sufficient notice under 5 U.S.C. § 553(b).

Plaintiff relies primarily on the case of *WBEN, Inc. v. United States*, 396 F.2d 601 (2nd Cir. 1968), *cert. denied* 393 U.S. 914, 89 S.Ct. 238, 240, 21 L.Ed.2d 200 (1968). In that case, radio stations which were licensed to broadcast full time attacked a 1967 decision of the Federal Communications Commission which affected broadcast time allocation and resulted in an immediate increase in interference with the complainants' broadcasts. The complainants in *WBEN* contended, *inter alia*, that the Commission decision constituted a modification of their licenses, and that separate evidentiary hearings were required under 47 U.S.C. §§ 316(a) and 303(f). 396 F.2d 601 at 617–621. In rejecting this contention, the Court of Appeals for the Second Circuit stated:

> Adjudicatory hearings serve an important function when the agency bases its decision on the peculiar situation of individual parties who know more about this than anyone else. But when, as here, a new policy is based upon the general characteristics of an industry, rational decision is not furthered by requiring the agency to lose itself in an excursion into detail that too often obscures fundamental issues rather than clarifies them. 396 F.2d 601 at 618.

Defendant seeks to distinguish the *WBEN* case on the ground that WBEN radio station had actually participated in the agency action being challenged there. *Cf.* 5 U.S.C. § 553(b). The Court in *WBEN* did not rely on this fact in any way. Under the law pertaining to the notice required for rulemaking, this is a distinction without a difference.

The decision in *WBEN* finds support in the case of *Air Line Pilots Association, International v. Quesada*, 276 F.2d 892 (1960), where a group of airline pilots unsuccessfully urged that the Federal Aviation Administrator had modified their licenses without a statutorily mandated hearing for license modification. The specific agency action challenged was the promulgation of a regulation precluding a pilot from operating a carrier aircraft after the pilot has reached his sixtieth birthday. In rejecting this challenge, the Court said:

> It is clear that Congress intended that the section [requiring an adjudicatory hearing for license modification—49 U.S.C. § 1429] should apply only when an order of the Administrator is directed to an individual airman and is concerned with conduct or other facts peculiar to that airman. 276 F.2d 892 at 897.

*See also Washington Utilities & Transportation Commission v. F. C. C.*, 513 F.2d 1142, 1160–1161 (9th Cir. 1975). This Court agrees with the reasoning in *WBEN, Inc. v. United States, supra*, and holds that the 1967 revision of 47 C.F.R. § 73.87 constituted rulemaking within the meaning of 5 U.S.C. § 551(4), rather than adjudicatory license modification under 47 U.S.C. §§ 316(a) and 303(f). The 1967 revision is an agency statement of general applicability and future effect designed to implement policy. 5 U.S.C. § 551(4). Certainly the 1967 revision had a measurable effect upon Defendant's broadcasting practices, and in that sense had an individualized impact. Nevertheless, the promulgation of the revision was not based on any facts peculiar to Defendant's radio station, and the revision was not directed specifically at Defendant. The generally applicable revision was in fact a rule rather than a license modification, and consequently the rulemaking notice provisions of 5 U.S.C. § 553 satisfy both the Administrative Procedure Act and due process, *Air Line Pilots Association v. Quesada*, 276 F.2d 892, 896 (2nd Cir. 1960), as well as the Communications Act of 1934. Personal notice of the 1967 rule change to each radio station affected is simply not required.

Although this Court has concluded that Defendant was not entitled to personal notice of the revision of 47 C.F.R. § 73.87, it is conceded that Defendant is entitled to the notice provisions of 5 U.S.C. § 553(b). The only arguably relevant exception to the notice provisions of § 553(b) is the exception for interpretive rules, § 553(b)(3)(A), and 47 C.F.R. § 73.87 is clearly not an interpretive rule. *See FCC v. Schreiber*, 381 U.S. 279, 288–89, 85 S.Ct. 1459, 1466–67, 14 L.Ed.2d 383 (1965). *See also* 47 U.S.C. §§ 154(i), 303(r). The next issue then becomes whether the requirements of 5 U.S.C. § 553(b)

were complied with. § 553(b) reads in relevant part as follows:

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

\* \* \* \* \* \*

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

(d) The required publication or service of a substantive rule shall be made not less that 30 days before its effective date.

\* \* \* \* \* \*

(e) Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

In its supplemental memorandum, Plaintiff relies on three publications in the Federal Register as proof of its compliance with 5 U.S.C. § 553(b). Each of these publications must be carefully scrutinized in light of the requirements of § 553(b). A summary of each of the three publications follows.

## I. THE 1961 NOTICE OF PROPOSED RULE MAKING

As noted above, *supra* page 2, 47 C.F.R. § 73.87 as it read prior to 1967 provided that radio stations such as Defendant's could begin broadcasting with their daytime facilities at 4:00 a. m. This was the situation in 1961 when a full-time radio station petitioned the Federal Communications System to require that all regional stations which were then broadcasting with daytime facilities beginning at 4:00 a. m. to notify the Commission as well as full-time stations with which the pre-sunrise broadcasts might interfere. The petition also sought to eliminate a then existing requirement that radio stations objecting to such pre-sunrise broadcasts conduct listening tests to identify the source of the objectionable interference. The Commission published a summary of the petition, along with both supporting and opposing comments, in a Notice of Proposed Rule-Making at 26 Fed. Reg. pp. 11911–11912 (Dec. 13, 1961). In its proposed amendment to 47 C.F.R. § 73.87 the Commission modified the petitioner's proposal to eliminate the requirement that pre-sunrise broadcasters notify other radio stations of their early broadcasts with daytime equipment. The text of the proposed rule was set out in full at 26 Fed.Reg. 11912. In substance, it provided that regional broadcasters which had been authorized to provide regular program service prior to the effective 1962 date of the proposed rule could begin broadcasting at 4:00 a. m. as long as they filed a notice of their broadcasting hours with the Commission. The proposed rule further set out a procedure under which other radio stations could register complaints about the pre-sunrise broadcasters. The proposed rule making set out the Commissioner's authority to make rules, and invited the submission of views and supportive data.

## II. THE 1962 FURTHER NOTICE OF PROPOSED RULE MAKING

In 1962, the Commission published a Further Notice of Proposed Rule Making at 27 Fed.Reg. pp. 12063–12068 (Dec. 6, 1962). The 1962 proposal contained some significant revisions of the 1961 proposal. Notably, it allowed permissive pre-sunrise broad-

casting privileges to extend to daytime radio stations only. Preferential treatment under the 1962 proposal would be given to those daytime broadcasters which served areas that lacked a full-time radio station. Until that time (and in fact, until the final revision in 1967) 47 C.F.R. § 73.87 applied as well to unlimited time stations with restrictions as to the use of daytime facilities (non-directional antennae). 27 Fed.Reg. 12064, ¶ 10. The Commission felt that unlimited time stations would be adequately protected during pre-sunrise hours through the use of maximum power limitations and restricted hours of operation imposed in the 1962 proposal upon permissive pre-sunrise broadcasting by daytime-only stations. *Id.* Defendant's radio station is an unlimited-time station under its license, although it has time restrictions on the use of daytime broadcasting equipment. Hence, under the 1962 proposal, Defendant's use of daytime facilities would have been restricted to the hours specified in his license. This is the ultimate result of 1967 revision of 47 C.F.R. § 73.87. *Supra*, page 2. It should be noted, however, that the Commission anticipated that some comments received on the 1962 proposal might favor continued inclusion of radio stations such as Defendant's into permissive pre-sunrise broadcasting privileges. 27 Fed.Reg. 12064, ¶ 10.

The full text of the 1962 proposed revision to 47 C.F.R. § 73.87 is set out at 27 Fed.Reg. 12067. The 1962 notice contained a reference to the Commission's rule-making authority, and invited comments. A deadline of January 28, 1963 was set for filing comments, and reply comments had to be filed by February 12, 1963 in order to be considered by the Commission.

### III. THE 1967 RULE MAKING

Nearly five years later, the Commission resurrected the idea of limitations upon pre-sunrise broadcasting by regional radio stations. This time, however, the notice published in 32 Fed.Reg. 10437–10448 (July 15, 1967) was a notice of actual amendment of 47 C.F.R. § 73.87 rather than a notice of proposed rule making. By the 1967 notice,

47 C.F.R. § 73.87 was amended to read in relevant part:

> . . . no standard broadcast station shall operate at times, or with modes or powers, other than those specified in the basic instrument of authorization. 32 Fed.Reg. 10447.

Under a new regulation published at the same time, radio stations such as Defendant's could, under certain conditions, request permission to continue or begin pre-sunrise broadcasting. 32 Fed.Reg. 10447, 47 C.F.R. § 73.99. The 1967 notice of rule making does not expressly contain any explanation of the delay between the 1962 proposal and the 1967 rule making. However, it should be noted that the Commission carefully considered about sixty volumes of comments filed in response to the 1962 proposal. 32 Fed.Reg. 10440 App. A. ¶ 1, 10441 ¶ 3. The 1967 notice of rule making contained a synopsis of the comments received, consideration of various proposals and conflicting considerations. Repeated references were made to the 1962 proposal, and it is clear that the 1967 notice represents a culmination of the efforts which formally began with the 1961 Notice of Proposed Rule Making.

The 1967 notice was published July 15, 1967, and the amendment to 47 C.F.R. § 73.-87 took effect on August 15, 1967. 32 Fed. Reg. 10440 ¶ 24.

The administrative proceedings summarized above must be examined in light of the admonition that 5 U.S.C. § 553(b) was ". . . designed to assure fairness and mature consideration of rules of general application." *N. L. R. B. v. Wyman-Gordan Company,* 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969). *See also Texaco, Inc. v. Federal Power Commission,* 412 F.2d 740, 744 (3rd Cir. 1969). A failure to comply with the requirements of § 553(b) would void 47 C.F.R. § 73.87 and render it unenforceable as a basis for the forfeiture sought in this case. *See City of New York v. Diamond,* 379 F.Supp. 503, 516 (S.D.N.Y. 1974).

Initially, this Court finds that the Commission has complied with the require-

ments of § 553(b)(1) and (2), § 553(c) and (d). Since the 1962 proposal and the 1967 rule differ somewhat, however, this Court deems it necessary to further consider whether § 553(b)(3) has been complied with. § 553(b)(3) requires that the notice of proposed rule making include

> "either the terms or substance of the proposed rule or a. description of the subjects and issues involved."

Insofar as Defendant is concerned, the 1962 proposal did not differ materially from the 1967 rule in that, under both the proposal and the rule, his station would be precluded from using daytime equipment for pre-sunrise broadcasting. Thus, the facts of this case are quite similar to those found in *Chip Steak Co. v. Hardin*, 332 F.Supp. 1084 (N.D.Cal.1971), *aff'd* 467 F.2d 481 (9th Cir. 1972), *cert. denied* 411 U.S. 916, 93 S.Ct. 1546, 36 L.Ed.2d 308 (1973). In *Chip Steak*, a proposed regulation generally prohibited the use of additives in meat products, and then set forth a list of certain named additives which permissibly could be used. The list found in the proposed regulation did not include sorbic acid salts as additives for cooked sausage. As finally adopted, the regulation challenged in *Chip Steak* expressly precluded the use of sorbic acid salts in cooked sausage. The Court held that the requirements of 5 U.S.C. § 553 had been met, in that the proposed regulation gave sufficient notice of the action ultimately taken. *See also Willapoint Oysters v. Ewing*, 174 F.2d 676 (9th Cir. 1949), *cert. denied* 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); *Chrysler Corporation v. Department of Transportation*, 515 F.2d 1053 (6th Cir. 1975). *Compare Wagner Electric Corporation v. Volpe*, 466 F.2d 1013 (3rd Cir. 1972); *Rodway v. United States Department of Agriculture*, 168 U.S.App.D.C. 387, 514 F.2d 809 (1975); *State of Maryland v. Environmental Protection Agency*, 530 F.2d 215 (4th Cir. 1975).

In short, this Court concludes that the substantive technical requirements of 5 U.S.C. § 553 were met in this case. The 1962 Further Notice of Proposed Rule Making provided ample warning to radio stations such as Defendant's that the Commission was considering discontinuing the practice of permitting pre-sunrise broadcasting without proper equipment. The delay of almost five years between the 1962 proposal and the 1967 amendment does seem somewhat lengthy, and perhaps a third notice of proposed rule making would have been helpful. *Cf. Alabama Power Company v. Federal Power Commission*, 167 U.S.App. D.C. 145, 511 F.2d 383, 388–389 (1974). Nevertheless, the administrative notices in this case met the substantive rule making requirements of the Administrative Procedure Act.

This Court now turns to the issue of whether a forfeiture may be imposed in this case. 47 U.S.C. § 503(b)(1) provides:

> Any licensee or permittee of a broadcast station who—
>
> (A) willfully or repeatedly fails to operate such station substantially as set forth in his license or permit,
>
> (B) willfully or repeatedly fails to observe . . . any rule or regulation of the Commission prescribed under authority of this chapter . . .
>
> *      *      *      *      *      *
>
> shall forfeit to the United States a sum not to exceed $1,000. Each day during which such violation occurs shall constitute a separate offense. Such forfeiture shall be in addition to any other penalty provided by this chapter.

Under 47 U.S.C. § 504(b), the Commission is empowered to remit or mitigate the forfeitures imposed by § 503(b). The Commission has chosen not to remit or mitigate the $800.00 forfeiture imposed for the particular violation in question here. Rather, the Commission commenced this suit under § 504(a), which provides, *inter alia:*

> . . . any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo . . .

The broad powers of judicial review granted in the above-quoted statute must necessarily include the power to review both the facts surrounding the alleged violation and

the amount of any forfeiture imposed. *cf. Brennan v. Occupational Safety and Health Review Commission*, 487 F.2d 438 (8th Cir. 1973).

■ This Court has carefully considered the facts, which are not in dispute, and finds that Defendant did in fact repeatedly violate 47 C.F.R. § 73.87 on thirteen of the fourteen days in question, and Defendant is therefore subject to a forfeiture under 47 U.S.C. § 503. The November 2, or first, violation simply could not have been a "repeated" violation since, on this record, no other violation preceded it. *See definition of "repeat" in Webster's Third New International Dictionary* 1924 (1971). The Commission does not contend that the violations involved in this case were willful. Under 47 U.S.C. § 503(b)(1), a violation must be either willful or repeated in order to support a forfeiture. On this record, this Court finds that thirteen of the fourteen alleged violations were repeated violations.

■ Under the circumstances of this case, however, examined in light of the *de novo* review provisions of 47 U.S.C. § 504(a), this Court is unable to agree that an $800.00 forfeiture is justified. Defendant lacked actual knowledge of the amendment of 47 C.F.R. § 73.87. While this fact is irrelevant to the question of whether his presunrise broadcasting was a violation, it is, in the judgment of this Court, relevant to the determination of the amount of the forfeiture imposed. Defendant ceased presunrise broadcasting immediately upon being informed of the violation. These facts point to the conclusions that the violations were inadvertent, and that Defendant was merely following in good faith the broadcasting hours set out in his license. The record does not reveal that any complaints of interference were filed, either by radio stations or listeners. This Court can only conclude that no such complaints were filed.

Because of the nature of the violations involved here, the lack of complaints and the Defendant's good faith inadvertent mistakes, this Court concludes that a forfeiture of $800.00 is excessive, and will grant summary judgment for Plaintiff in the amount of $250.00. This Court agrees that some forfeiture is necessary to enforce the provisions of the law, and finds that, on these facts, a $250.00 forfeiture adequately accomplishes that purpose.

The foregoing shall constitute this Court's findings of fact and conclusions of law.