UNITED STATES of America, Plaintiff-Appellee,

v.

WIYN RADIO, INC., Licensee of Radio Station WIYN, Defendant-Appellant.

No. 79–1410
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 27, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Cohen & Berfield, Morton L. Berfield, Washington, D. C., for defendant-appellant.

Richard W. Oehler, Civil Div., Dept. of Justice, John P. Greenspan, Federal Comm. Commission, Washington, D. C., for plaintiff-appellee.

Before REAVLEY, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-appellant is the licensee of standard radio broadcast station WIYN in Rome, Georgia. On April 23, 1971, during the broadcast of WIYN's *Comment* program, the moderator characterized the Institute of American Democracy ("IAD") and its newsletter, *Homefront*, as "definitely subversive" and "to the Far Left." The WIYN moderator made these references in the context of a diatribe regarding alleged communist infiltration of the Methodist Church. Appellant never notified IAD of the remarks, though as a result of contact from a member of *Comment*'s listening audience, IAD did eventually learn of them.

The Federal Communications Commission ("FCC") thereafter found appellant's failure to notify IAD of the broadcast remarks to be in violation of the personal attack rule, 47 C.F.R. § 73.123(a) (now § 73.-1920(a)).[1] Pursuant to 47 U.S.C. § 503(b)(1),[2] the FCC sought to exacta forfeiture of $1,000 from appellant for its continued failure to notify IAD of the attack. When appellant WIYN declined to pay the forfeiture, the FCC instituted the collection action below under 47 U.S.C. § 504. The district court made a de novo determination, as prescribed by section 504(a), that the FCC finding had been correct, and ordered appellant to pay the forfeiture. We reverse.

Even if we assume, without deciding, that the remarks in question did constitute a personal attack under section 73.123(a) and that appellant, therefore, defaulted on its duty to notify IAD, section 503(b)(1)(B) imposes forfeiture liability only for willful or repeated failure to observe FCC rules or regulations. The FCC has made no allegation nor adduced any evidence that appellant's purported transgression was willful. Nor has the FCC established repeated violations by disclosing any instance other than the broadcast remarks of April 23, 1971, regarding IAD, in which appellant may have broadcast a personal attack as defined by section 73.123(a) and then failed properly to supply the prescribed notice and offer of opportunity to respond. Rather, the FCC relies for its allegation of repeated violations on that portion of section 503(b)(1) that states, "Each day during which such violation occurs shall constitute a separate offense." According to this provision, the

---

1. The personal attack rule, 47 C.F.R. § 73.-123(a) (now § 73.1920(a)), provides:

   (a) When, during the presentation of views on a controversial issue of public importance, an attack is made upon the honesty, character, integrity or like personal qualities of an identified person or group, the licensee shall, within a reasonable time and in no event later than 1 week after the attack, transmit to the person or group attacked: (1) Notification of the date, time and identification of the broadcast; (2) A script or tape (or an accurate summary if a script or tape is not available) of the attack; and (3) An offer of a reasonable opportunity to respond over the licensee's facilities.

2. At the time of its application in this action, 47 U.S.C. § 503(b)(1) (amended 1978), provided in pertinent part:

(b)(1) Any licensee or permittee of a broadcast station who—

   *   *   *   *   *

   (b) willfully or repeatedly fails to observe any of the provisions of this chapter or of any rule or regulation of the Commission prescribed under authority of this chapter or under authority of any treaty ratified by the United States,

   *   *   *   *   *   *

shall forfeit to the United States a sum not to exceed $1,000. Each day during which such violation occurs shall constitute a separate offense. Such forfeiture shall be in addition to any other penalty provided by this chapter.

FCC argues, each day on which appellant failed to provide IAD with the required notification constituted an independent violation of the personal attack rule. Therefore, appellant's second day of continued failure to notify IAD constituted a repeated violation and subjected appellant to the forfeiture provisions of section 503. We cannot accept, nor do we believe Congress intended, the FCC interpretation.

The quoted portion of section 503 subjects to separate liability the recurring daily episodes of a delictual pattern that might otherwise be treated in the aggregate. *E. g., United States v. Daniels*, 418 F.Supp. 1074 (D.S.D.1976) (station repeatedly violated the terms of its license and 47 C.F.R. § 73.87 (now § 73.1745) by operating prior to sunrise on fourteen consecutive days). Similarly, "*continuous violation* is made a separate offense each day it occurs and so becomes 'repeated' on the second day of the violation." (emphasis added). S.Rept. No. 95–580, 95th Cong., 2d Sess. 24, *reprinted in* [1978] U.S.Code Cong. & Ad.News, pp. 109, 132 (legislative history of amendment and reenactment of 47 U.S.C. § 503(b), Pub.L. 95–234, § 2, 92 Stat. 33 (1978)). Thus, for example, each day a twenty-four hour station continued to broadcast other than at its assigned frequency, 47 C.F.R. § 73.59, to broadcast above its assigned power output, 47 C.F.R. § 73.1745, or failed to maintain its log books, 47 C.F.R. §§ 73.1800–.1830 would be treated as a separate offense, rather than as a portion of a single violation transpiring uninterrupted over a long period of time.

The violation of the personal attack rule in this case, however, clearly was not a recurring violation. Moreover, it could not have been a continuous violation. Though the distinction between a continuous violation and that involved here is gossamer, it is real. In a continuous violation, like those noted above, there exists a continuing or persistent legal duty that the violator steadily fails to fulfill. In the instant case there was but a single, pointed duty, admitting of only a single dereliction. The broadcast of the arguable personal attack

gave rise to a discrete duty under section 73.123(a), to transmit "within a reasonable time and in no event later than 1 week after the attack" (1) notification of the attack, (2) a script or tape, and (3) an offer of opportunity to respond over the licensee's facilities. When in such a situation the prescribed period passes without the broadcaster having made the required overtures, a dereliction of this duty, and therefore a violation, occurs at that point. Though the *effect* of this failure to act within the prescribed period persists, the violation itself cannot be said to "occur" each day thereafter within the meaning of section 503(b)(1). Conversely, even if the broadcaster acts after the prescribed period to ameliorate the *effects* of his dereliction by transmitting what might earlier have been a satisfactory notification and offer of opportunity to respond, such an overture can have no effect on the fact of the violation.

In a very similar situation the district court in *Summa Corp. v. United States*, 447 F.Supp. 923 (D.Nev.1978), reached a result consistent with our decision here. There a broadcaster had allegedly run afoul of 47 U.S.C. § 315 by failing to accord one candidate equal political advertisement opportunities in response to his opponent's prior use of the broadcaster's facilities. The FCC, seeking a forfeiture under section 503(b)(1)(B) for "repeated" violations argued, as they do here, that each day on which the station failed to provide an equal opportunity to respond constituted a separate offense. The district court expressly rejected that theory, holding instead that since each "use" by a candidate of a broadcaster's facilities triggered a duty to provide an equal access opportunity for his opponent, the offense became "repeated" only when the broadcaster permitted more than one "use" and defaulted in its duty to provide the corresponding equal access opportunities.

Our decision here is also bolstered by the ludicrous, alternative results that would derive from acceptance of the FCC interpretation. Section 503(b)(1)(B) provides for a forfeiture for willful or repeated violations.

Under the FCC interpretation willfulness would effectively be eliminated as a predicate for forfeiture. A broadcaster who failed to make the required notification under section 73.123(a) could, on the first day of his violation, be subject to forfeiture under section 503(b)(1)(B) only if the violation were willful. If the FCC patiently awaited the second day of "continuing violation", the sanctions of the section 503(b)(1) would attach even if the broadcaster's noncompliance had been the result of sheer inadvertence. Moreover, his potential liability would continue to escalate at the rate of $2,000 per day, until the eleventh day after he omitted to make the required notice, when he would reach a maximum penalty of $20,000. 47 U.S.C. § 503(b)(1), (2) (as amended 1978).

While we have no reason to believe the FCC would apply section 503 in such draconian fashion, we do not believe Congress intended to invest the Commission with that potential in cases like that before us. With its capacity to issue cease and desist orders, 47 U.S.C. § 312(b), and to exact forfeitures from willful violators, the FCC is hardly hamstrung in its enforcement capability even as to first offenders.

Accordingly, the judgment below requiring payment of the forfeiture is reversed.

REVERSED.