**UNITED STATES of America, Plaintiff,**

v.

**PENINSULA COMMUNICATIONS, INC., Defendant.**

**No. A02–295 CV (JWS).**

United States District Court, D. Alaska.

Sept. 14, 2004.

**1014**

---

**ORDER FROM CHAMBERS**

SEDWICK, District Judge.

**[Re: Cross–Motions for Summary Judgment at Dockets 17 and 20]**

### I.  MOTIONS PRESENTED

At docket 17, plaintiff United States of America moves for summary judgment. Defendant Peninsula Communications, Inc. cross-moves for summary judgment at docket 20.  Oral argument was heard August 9, 2004.  The parties filed a stipulated chronology of events at the court's request subsequent to the argument.[1]

### II.  BACKGROUND

This is an action to enforce an order of monetary forfeiture in the amount of

---

1. Doc. 28.  The document included certain statements asserted to be correct by defendant, but as to which plaintiff disagreed. These statements are clearly designated, and the court does not consider them in this order.

$140,000.00, issued on February 1, 2002, by the Federal Communications Commission (FCC) against defendant Peninsula Communications, Inc. The parties agree that the facts that led up to the order of forfeiture are fully set forth in *United States v. Peninsula Communications, Inc.*,[2] and the court will not repeat those facts in detail here. Briefly, in 1997, the FCC granted defendant's license renewal applications for the two primary FM radio stations and nine FM translator radio stations defendant owned, conditioned on defendant assigning the translator licenses to another entity. After further proceedings before the FCC and in the United States Circuit Court of Appeals for the District of Columbia, on May 19, 2001, the FCC rescinded the conditional grants of defendant's license renewal applications as to seven of the translator stations and ordered defendant to cease operating those seven stations.

Defendant continued to operate the seven translator stations after May 19, 2001. Defendant contends that it did so "[i]n order to protect its legal position (and on advice of counsel)[.]"[3] On June 15, 2001, defendant filed an appeal of the FCC's May 2001 termination order to the D.C. Circuit, an appeal which was ultimately resolved in the FCC's favor.[4] Defendant did not then seek, and never did obtain, a stay of the termination order.[5] While defendant's appeal was pending in the D.C. Circuit, the United States, on July 6, 2001, filed suit in this court, seeking an injunction to enforce the terms of the FCC's May 2001 order.[6] This court issued a preliminary injunction ordering defendant to cease operating the seven translator stations on October 17, 2001.[7] Defendant filed an appeal to the Ninth Circuit Court of Appeals the following day.[8] On November 26, 2001, the Ninth Circuit stayed this court's preliminary injunction order pending appeal.[9] This court's issuance of the preliminary injunction was affirmed by the Ninth Circuit in *United States v. Peninsula Communications, Inc.*,[10] on April 22, 2002. Defendant's petition for a rehearing was denied on July 3, 2002.[11] Defendant then filed a motion for a stay of the termination order in the D.C. Circuit, which was denied on August 13, 2002.[12] Defendant ceased operating the seven translator stations on August 28, 2002.[13]

During the pendency of defendant's appeals, the FCC, on February 1, 2002, adopted a Forfeiture Order in which it found that defendant "had willfully and repeatedly failed to comply with Section 301 of the Communications Act of 1934" by continuing to operate the seven translator stations after its licenses for those stations were rescinded on May 19, 2001.[14] The FCC imposed a $140,000.00 monetary for-

---

**2.** 287 F.3d 832 (9th Cir.2002).

**3.** Cross–Motion at 2, docket 20.

**4.** *See Peninsula Communications, Inc. v. F.C.C.*, 55 Fed.Appx 1, 2003 WL 242660 (D.C.Cir.2003) (affirming FCC's decision to rescind the renewals for failure to meet the divestiture condition).

**5.** Doc. 28 at p. 8.

**6.** *United States v. Peninsula Communications, Inc.*, Case No. A01–0207–CV (JWS).

**7.** Docket 24 in A01–0207 (JWS).

**8.** Docket 25 in A01–0207 (JWS).

**9.** *See* Order, docket 30 in A01–0207 (JWS); doc. 28 at p. 11.

**10.** 287 F.3d 832 (9th Cir.2002)

**11.** Doc. 28 at p. 12.

**12.** *Id.*

**13.** *See* Notice of Compliance, docket 35 in A01–0207 (JWS); doc. 28 at p. 12.

**14.** Doc. 17, Ex. 1. Section 301 of the Federal Communications Act requires a license in or-

feiture against defendant for its operation of the seven translator stations without valid licenses. Defendant has not paid the $140,000.00 forfeiture.

On December 4, 2002, plaintiff filed the instant action, seeking judgment against defendant in the amount of the $140,000.00 forfeiture. Plaintiff now moves for summary judgment, arguing that there are no facts in dispute that would preclude an entry of judgment against defendant in the amount of $140,000.00. Defendant cross-moves for summary judgment, arguing that a forfeiture should not have been imposed, or in the alternative, that the $140,000.00 forfeiture that was imposed is excessive.

### III. STANDARD OF REVIEW

■ As an initial matter, defendant argues that summary judgment in favor of the United States is not authorized or appropriate in an FCC forfeiture case because the party from whom a forfeiture is sought is entitled to a trial *de novo* as a matter of law.[15] This argument is premised on 47 U.S.C. § 504(a), which sets forth the procedures for the recovery of a forfeiture and provides, in pertinent part, "[t]hat any suit for the recovery of a forfeiture imposed pursuant to the provisions of this chapter shall be a trial de novo[.]" Defendant then cites to a series of cases that mention the trial *de novo* require-

ment. *See Dougan v. F.C.C.,*[16] *Miami MDS Co. v. F.C.C.,*[17] *Pleasant Broadcasting Co. v. F.C.C.,*[18] *United States v. WIYN Radio, Inc.,*[19] and *United States v. Rust Communications Group, Inc.*[20]

None of the cases cited by defendant stand for the proposition that summary judgment is not appropriate or authorized in an action brought pursuant to 47 U.S.C. § 504(a). None of these cases even address the question of whether summary judgment is available in an FCC forfeiture case. The Ninth Circuit has never addressed this issue, nor has any other circuit ever done so. Plaintiff points out that such motions are routinely brought in FCC forfeiture cases and cites to a series of cases in which motions for summary judgment were decided by the district court. *See, e.g., Action for Children's Television v. F.C.C.,*[21] *United States, v. WHAS, Inc.,*[22] *United States v. Ganley,*[23] *United States v. Dunifer,*[24] and *F.C.C. v. Summa Corp., Las Vegas, Nev.*[25] Because no party disputed that the summary judgment device was available in a Section 504(a) action, these cases, and others like them, are of little guidance here.

In the context of other statutes that mandate a trial *de novo* of an agency decision, courts have held that the use of the procedural device of summary judgment is appropriate. *See Miller v. FDIC,*[26] *Freed-*

---

der to lawfully operate a radio station. *See* 47 U.S.C. § 301.

**15.** Defendant is not contending that this ban on summary judgment extends to the person against whom a forfeiture is sought since defendant has filed a cross-motion for summary judgment in this case.

**16.** 21 F.3d 1488, 1490 (9th Cir.1994).

**17.** 14 F.3d 658, 661 (D.C.Cir.1994).

**18.** 564 F.2d 496, 498 (D.C.Cir.1977).

**19.** 464 F.Supp. 101, 103 (N.D.Ga.1978), *reversed on other grounds,* 614 F.2d 495 (5th Cir.1980).

**20.** 425 F.Supp. 1029, 1031 (E.D.Va.1976).

**21.** 59 F.3d 1249 (D.C.Cir.1995).

**22.** 385 F.2d 784 (6th Cir.1967).

**23.** 300 F.Supp.2d 200 (D.Me.2004).

**24.** 997 F.Supp. 1235 (N.D.Cal.1998).

**25.** 447 F.Supp. 923 (D.Nev.1978).

**26.** 956 F.2d 58, 60 (4th Cir.1992) (holding that summary judgment was appropriate

*man v. United States Dep't of Agriculture,*[27] *Modica v. United States,*[28] and *Mosley v. United States.*[29] The court perceives no reason why the same result should not apply to a suit brought under Section 504(a). The trial *de novo* standard means that the court's review of an FCC forfeiture order is not limited to the administrative record. It does not mean that summary judgment cannot properly be granted if there are no genuine issues of material facts. The court will consider the cross-motions for summary judgment on their merits.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[30] The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.[31] If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[32] In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.[33] "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." [34] When, as here, the court is faced with cross-motions for summary judgment, each motion must be separately considered on its merits.[35]

## IV. DISCUSSION

Section 504 of Title 47, United States Code, grants district courts "broad powers of judicial review" of FCC forfeiture orders, including "the power to review both the facts surrounding the alleged violation and the amount of any forfeiture imposed." [36] The court's review "is not limited to a review of the administrative record before the FCC, nor do the findings and

---

means of resolving civil penalty dispute even though the Change in Bank Control Act [12 U.S.C. § 1817(j)(16)] provided for a trial *de novo*).

**27.** 926 F.2d 252, 261 (3rd Cir.1991) (grant of summary judgment did not deny plaintiff right to trial *de novo* provided by Food Stamp Act, 7 U.S.C. § 2023).

**28.** 518 F.2d 374, 376 (5th Cir.1975) ("Despite the trial de novo provision, it is clear that summary judgment is a proper means of disposing of requests for review under section 2022 [of the Food Stamp Act] where there are presented no genuine issues of material fact.").

**29.** 425 F.Supp. 50, 58 (N.D.Cal.1977) (although federal employee "is entitled to a trial de novo [on Title VII claim], summary judgment may nonetheless be awarded against him if all of the evidence before the court discloses no genuine issue of material fact.")

**30.** Fed.R.Civ.P. 56(c).

**31.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**32.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**33.** *Id.* at 255, 106 S.Ct. 2505.

**34.** *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987). Arguably, if there are questions of material fact here, this matter would be tried to a jury. *See Illinois Citizens Committee for Broadcasting v. F.C.C.,* 515 F.2d 397, 406, n. 19 (D.C.Cir.1974) (observing that "[a]n action by the United States to recover a statutory penalty is of a common law nature for purposes of the Sixth Amendment.").

**35.** *See Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir.2001).

**36.** *United States v. Daniels,* 418 F.Supp. 1074, 1080–81 (D.S.D.1976).

**1018**

conclusions of the Commission in this case carry any weight whatsoever."[37] The court must make its own "'independent determination of the issues.'"[38]

### A. Was Imposition of the Forfeiture Proper?

█ Section 503(b)(1)(B) of Title 47, United States Code, provides that "[a]ny person who is determined by the Commission . . . to have . . . willfully or repeatedly failed to comply with any of the provisions of this chapter or of any . . . order issued by the Commission under this chapter . . . shall be liable to the United States for a forfeiture penalty." While it is undisputed that defendant continued to operate the seven translator stations for fifteen months after its licenses were rescinded and it was ordered to cease operating the stations, defendant insists that it had a right to continue operating the stations, and thus, a forfeiture should not have been imposed against it. Defendant asserts that "the Ninth Circuit Court of Appeals stayed the F.C.C. order on November 21, 2001 to allow [defendant] to complete proceedings before that Court."[39] If the

FCC's May 2001 order had been stayed, then defendant's continued operation of the stations would not have been in violation of Section 301 of the Federal Communications Act or the May 2001 order. But, the May 2001 order was never stayed. The Ninth Circuit stayed this court's preliminary injunction order pending appeal.[40] The Ninth Circuit's stay order did not address or effect the FCC's May 2001 order. The May 2001 order was never stayed, and defendant's licenses for the seven translator stations were terminated as of the date of that order.

Defendant next argues that it could continue to operate the seven translator stations as long as judicial proceedings were pending because its licenses were still in effect pursuant to 47 U.S.C. § 307.[41] Section 307(c)(3) provides that "[p]ending any hearing and final decision on . . . an application [for a license renewal] and the disposition of any petition for rehearing pursuant to section 405 of this title, the Commission shall continue such license in effect." Defendant contends that the FCC has interpreted "pending" for purposes of Section 307(c)(3) to extend

37. *Summa Corp.*, 447 F.Supp. at 925.

38. *Id. (quoting United States v. First City Nat'l Bank of Houston*, 386 U.S. 361, 368, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967)).

39. Cross–Motion at 4, docket 20.

40. *See* Order, docket 30, A01–0207–CV (JWS).

41. Defendant's Section 307 argument is similar to an argument that defendant raised in the appeal of this court's preliminary injunction order. On appeal, defendant relied on 47 C.F.R. § 1.62(a)(1), which provides that "[w]here there is pending before the Commission at the time of expiration of license any proper and timely application for renewal of license . . . such license shall continue in effect . . . until such time as the Commission shall make a final determination with respect to the renewal application." Then, defendant

pointed to 47 C.F.R. § 73.3523(d)(2) for a definition of "pending." Section 73.3523(d)(2) provides that "[a]n application shall be deemed to be pending before the Commission from the time an application is filed with Commission until an order of the Commission granting or denying the application is no longer subject to reconsideration by the Commission or to review by any court." Based on these two regulations, defendant argued to the court of appeals that its licenses for the seven translators "continued in effect" after the FCC's May 2001 order because its applications were still "pending." *Peninsula Communications, Inc.*, 287 F.3d at 840. The court of appeals rejected this argument because "[t]he definition of 'pending' in 47 C.F.R. § 73.3523(d)(2) is limited to proceedings under that section of the regulations, and thus does not apply to the renewal application procedure set forth in 47 C.F.R. § 1.62(a)(1)." *Id.*

to judicial review. Therefore, defendant argues that its licenses for the seven translator stations were in effect until its appeals were final.

Defendant cites no authority to support its argument that the FCC has interpreted "pending" for purposes of Section 307(c)(3) to include judicial proceedings, nor is the court aware of any such authority. The court's independent research reveals that the FCC has expressly interpreted "pending" as used in Section 307(c)(3) "as extending only to Commission decisions and not to court appeals." [42] In reaching its conclusion, the FCC noted that Section 307 was silent as to a definition of "pending," yet, when Congress intended to extend "pending" to include court proceedings, it did so expressly, as in 47 U.S.C. § 311(c)(4) [43] and (d)(4). [44] In light of the fact that defendant has failed to offer any authority to the contrary, the court is persuaded by the FCC's interpretation that "pending" for purposes of Section 307 does not include court proceedings. Section 307(c)(3) cannot serve as a justification for defendant's continued operation of the seven translator stations after its licenses for those stations were rescinded in May 2001.

Defendant next argues that it had to continue to operate the translator stations while its appeals were pending in order to ensure that its licenses would still be valid, should it prevail on appeal. This argument is premised on 47 U.S.C. § 312(g), which provides that "[i]f a broadcasting station fails to transmit broadcast signals for any consecutive 12–month period, then the station license granted for the operation of that broadcast station expires at the end of that period[.]" The FCC has no authority to reinstate licenses that expire pursuant to Section 312(g). [45] Defendant thus argues that it had to continue to operate the seven translator stations pending appeal because if it ceased operations and the appeals took more than twelve months, its licenses would automatically expire, making any appeal moot. Defendant cites no authority to support its contention that Section 312(g) allows a licensee to continue operating a broadcast station after the FCC has cancelled or revoked the licensee's license in order to "protect" the license from automatic expiration.

By its terms, Section 312(g) applies to *licensed* stations. As of May 2001, defendant's licenses for the seven translators were no longer in effect. [46] Section 312(g) has no application to defendant and cannot serve as a justification for defendant's continued operation of the seven translator stations after May 19, 2001.

Based on the foregoing, there are no genuine issues of material fact as to whether a forfeiture should have been imposed on defendant. It is undisputed that defendant operated the seven translator stations for fifteen months without valid

---

**42.** *In re Application of Pinelands, Inc.*, 7 FCC Rcd. 6058, 6061 n. 12, 1992 WL 690509 (1992).

**43.** 47 U.S.C. § 311(c)(4) provides: "[F]or the purposes of this subsection an application shall be deemed to be 'pending' before the Commission from the time such application is filed with the Commission until an order of the Commission granting or denying it is no longer subject to rehearing by the Commission or to review by any court."

**44.** 47 U.S.C. § 311(d)(4) provides: "For purposes of this subsection, an application shall be deemed to be pending before the Commission from the time such application is filed with the Commission until an order of the Commission granting or denying it is no longer subject to rehearing by the Commission or to review by any court."

**45.** *See In re OCC Acquisitions, Inc.*, 17 FCC Rcd. 6147, 6149, 2002 WL 471770 (2002).

**46.** *See Peninsula Communications, Inc.*, 287 F.3d at 839–40.

licenses in violation of Section 301 of the Federal Communications Act.

## B. Is the Amount of the Forfeiture Excessive?

Section 503(b)(2)(D) of Title 47, United States Codes, provides that

> [i]n determining the amount of such a forfeiture penalty, the Commission ... shall take into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require.

■ Plaintiff contends that the $140,000.00 forfeiture is reasonable and not excessive; defendant contends that the $140,000.00 forfeiture is excessive. To support its argument that the $140,000.00 is reasonable, plaintiff points only to the fact that defendant intentionally continued to operate the seven translator stations for fifteen months after its licenses were rescinded and it was ordered to cease operating the stations.

It is undisputed that defendant operated the seven translator stations for fifteen months after its licenses were rescinded and defendant's arguments that it had a right to continue operations fail. Contrary to defendant's contention, there was no stay of the May 2001 order and defendant had no statutory right to continue to operate the stations. Defendant emphasizes that it continued to operate on the advice of legal counsel in order to protect its licenses [47] but that does not excuse defen-

dant's operation of the stations after May 19, 2001. Defendant also contends that it had a good faith belief that it could continue to operate the stations because the FCC always allows licensees to continue to operate pending judicial review. Even if defendant originally had a good faith belief that it could continue operating the seven translator stations after the May 2001 order was issued, that belief should have changed. Plaintiff filed an enforcement action in this court less than two months after the FCC issued the May 2001 order. That should have been a clear signal to defendant that it was not allowed to continue operating the seven translator stations. Defendant also points out that it sought relief in the courts, which is true. Defendant promptly sought review of the May 2001 decision, but defendant also was well aware of the fact that both this court and the D.C. Circuit Court of Appeals denied his motions to stay enforcement of the May 2001 decision.

The $140,000.00 forfeiture also complies with 47 U.S.C. § 503(b)(2)(A), which provides that the amount of forfeiture for each violation or each day of violation may not exceed $25,000.00. Section 503(b)(2)(A) also provides that the total amount of forfeiture imposed for any single act or failure to act cannot exceed $250,000.00. Because there were seven continuing violations here, the FCC could have imposed a forfeiture in excess of $1.75 million.[48]

However, defendant has come forward with evidence that at least suggests that the $140,000.00 was excessive.[49] It is un-

---

**47.** See Deposition of David Becker at 87, In. 3 through 91, In. 10, doc. 20, Ex. A.

**48.** Defendant accuses the FCC of "dragging" all of defendant's licenses into the forfeiture proceeding in order to reach the $140,000.00 forfeiture amount. Although the FCC did hold a hearing to consider whether defendant should be allowed to retain its current licens-

es in light of defendant's conduct in connection with the May 2001 order, the forfeiture amount is clearly based only on defendant's continued operation of the seven translator stations.

**49.** Defendant also contends that the forfeiture in the amount of $140,000.00 is excessive when compared to other reported forfeitures.

disputed that defendant had no history of prior violations in its over twenty-year history as a broadcaster.[50] There is evidence that defendant lacks substantial financial resources and may not be able to pay a forfeiture of $140,000.[51] There is also evidence from which a reasonable fact finder could conclude that the FCC treated defendant differently from other licensees in similar situations by not allowing defendant to continue to operate during judicial proceedings. The FCC has the discretion to allow licensees to continue to operate pending judicial review and often does allow licensees to continue to operate pending review. *See, e.g., In the Matter of Rice*[52] and *In re Application of Faith Center, Inc.*[53] The fact that the FCC did not allow defendant to continue to operate the seven translator stations may have been reasonable given the number of years the proceedings on defendant's license renewals had been pending, but it is conceivable that a reasonable fact finder could conclude that the FCC's decision as to defendant was unfair and that a lesser forfeiture amount should have been imposed as a result. In addition, defendant contends that it attempted to comply with the order to divest itself of the translator stations but that the FCC's handling of the proposed sale caused defendant to lose its buyer. Had the proposed sale gone through there would have been no violations and no forfeiture.

It is undisputed that defendant had a buyer for the seven translator stations and that defendant filed assignment applications with the FCC, but it is not clear from the record currently before the court why those assignments did not take place. Defendant points to testimony from its owner that suggests that conditions that the FCC put on the assignments were unreasonable and caused the assignments to never be completed.[54] While it is unclear that the FCC did so, if the FCC unreasonably hampered the transaction, then it is conceivable that a reasonable fact finder could find that a lesser amount than $140,000 should have been imposed.

Reasonable minds could also differ on the gravity of the violations that occurred here. On one hand, as defendant suggests, the continual operation of the translator stations did not harm the public interest because people in the effected areas received better listening choices while the seven stations remained on the air. On

See *Dougan*, 21 F.3d 1488 ($17,500 forfeiture for operating without a license), *AT & T Corp. v. FCC*, 323 F.3d 1081 (D.C.Cir.2003) ($80,-000 forfeiture for "slamming" customers); *Miami MDS Co.*, 14 F.3d 658 ($2,000 forfeiture for unauthorized construction); *WIYN Radio, Inc.*, 464 F.Supp. 101, *reversed on other grounds*, 614 F.2d 495 ($1,000 forfeiture for repeated violations of personal attack rule) and *Daniels*, 418 F.Supp. 1074 (forfeiture of $800 reduced to $250). Comparing the forfeiture in this case to those imposed in other cases is of little value since the facts of each case are unique. That said, of the cases cited by defendant, only *Dougan* involves a forfeiture imposed for operating without a license. Considering that *Dougan* only involved one station, the $17,500.00 imposed in that case is comparable to the amount of $20,000.00 imposed here for each violation.

50. The fact that the FCC found defendant's history did not warrant a downward departure is entitled to no weight or consideration. *See Summa Corp.*, 447 F.Supp. at 925.

51. Deposition of David Becker at 80, Ins. 13–14, doc. 20, ex. A.

52. 17 FCC Rcd. 4111, 4112 (2002) (convicted sex offender allowed to operate until 90 days after completion of judicial proceedings)

53. 82 FCC 2d 1 (1980) (licensee allowed to continue to operate until 30th day after completion of judicial review).

54. Deposition of David Becker at 21, In. 1 through 24, In. 5, doc. 20, Ex. A.

the other hand, the public also has an interest in ensuring that citizens comply with federal statutes and orders from administrative agencies.

As to plaintiff's motion for summary judgment on the issue of the amount of the forfeiture, viewing the foregoing considerations in the light most favorable to defendant, the court cannot conclude, as a matter of law, that the $140,000.00 forfeiture amount was not excessive. As to defendant's motion for summary judgment on the issue of the amount of the forfeiture, viewing the foregoing evidence in the light most favorable to plaintiff, the court cannot conclude, as a matter of law, that the forfeiture was excessive. Neither party is entitled to summary judgment on the issue of the amount of the forfeiture.

## IV. CONCLUSION

Based on the foregoing, the United State's Motion for Summary Judgment at docket 17 is **GRANTED IN PART** and **DENIED IN PART** consistent with the discussion above, and Peninsula Communication, Inc.'s Cross–Motion for Summary Judgment at docket 20 is **DENIED**.